IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

IFTIKHAR AHMED MEMON,

                Plaintiff,

    v.

CHIPPEWA VALLEY TECHNICAL COLLEGE,

                Defendant.

OPINION & ORDER

14-cv-243-jdp

---

This is the third of four cases plaintiff Iftikhar Ahmed Memon has recently filed in this court alleging discriminatory hiring practices by community and technical colleges in Wisconsin and Illinois. The basis for this case is that plaintiff applied for a job as the "associate dean-business" at defendant Chippewa Valley Technical College (CVTC), but was not offered an interview for that position. He contends that defendant violated Title VII of the Civil Rights Act and the Age Discrimination in Employment Act (ADEA) by discriminating against him based on his race, national origin, religion, and age when it refused to interview him.

Currently before the court are summary judgment motions filed by each side. I will deny plaintiff's motion for summary judgment because it does not follow this court's procedures by including numbered proposed findings of fact. But I will consider plaintiff's arguments and evidence in the context of defendant's motion for summary judgment.

1

After considering the parties' summary judgment materials,[1] I will grant defendant's motion for summary judgment, Dkt. 24, because plaintiff fails to adduce evidence from which a reasonable jury could find that defendant is lying when it explains that it made its decision based on its stated qualifications rather than racial, religious, or age-based preferences.

Before turning to the merits of defendant's summary judgment motion, I will address two other filings by plaintiff. Plaintiff has filed a motion asking the court to "enforce the law or laws against CVTC which prohibited to sign blank forms," Dkt. 41, by which I understand plaintiff to be saying that he does not want to be forced to include his Social Security number on forms sent to him by defendant in an effort to gain his authorization of the release of his employment records. Defendant responds that the authorizations are unnecessary to defend this lawsuit. So I will deny plaintiff's motion as moot.

Plaintiff has also filed a motion for the court's assistance in recruiting counsel, Dkt. 46, but he does not support his motion with evidence that he has attempted to locate counsel on his own and has been rejected, as is usually required by this court. Nor am I convinced that this matter is too complicated for plaintiff to litigate. Rather, based on his efforts in litigating this and other lawsuits, it seems clear that plaintiff's problem is not that he lacks a trained advocate. He is capable of presenting his case, but he has no evidence to support his belief that he has faced unlawful discrimination. I will deny his motion for recruitment of counsel and decide defendant's summary judgment motion on the merits.

---

[1] Defendant did not file a formal reply brief, although its positions are made clear by its brief-in-chief, brief in opposition to plaintiff's motion for summary judgment, and replies to plaintiff's proposed findings of fact responses.

UNDISPUTED FACTS

The following facts are drawn from the parties' proposed findings of fact and attached exhibits and are, unless otherwise noted, undisputed.

Plaintiff Iftikhar Ahmed Memon is a resident of Black River Falls, Wisconsin. Plaintiff is of Pakistani descent, practices Islam, and was born in 1968. Defendant Chippewa Valley Technical College (CVTC) is a post-secondary technical college that awards two-year associate degrees, one- and two-year technical diplomas, short-term certifications and training to its students. CVTC is located in Eau Claire, Wisconsin.

On January 18, 2013, defendant posted an open position for "Associate Dean-Business." Defendant states that "[t]he Associate Dean-Business was generally responsible for working with faculty, staff, and CVTC leadership to improve and enhance program effectiveness through planning and delivery of curriculum, the supervision and evaluation of instructional program faculty and program support staff, and scheduling of courses and instructors." Dkt. 44, at 3.

The job posting listed the following required and preferred qualifications for the position:

- Master's degree required. If Master's degree is in progress, you may be considered.

- Minimum of 24 months business-related occupational experience.

- Minimum of two years teaching experience required (experience at postsecondary level preferred).

- Supervisory experience in a team management environment preferred.

- Experience with staff development and evaluation preferred.

- Experience with strategic planning and quality improvement preferred.

3

*Id*. Because the Associate Dean-Business position was a supervisory position, applicants were required to meet the occupational experience requirements of the Wisconsin Technical College System (WTCS) for business instructors. WTCS required 24 months of verifiable "business-related occupational experience" as a qualified worker in one of the occupational areas overseen by the position. The WTCS certification document for "Business Management" positions lists job titles that qualify as verifiable occupational experience (such as "Department Manager," "Chief of Staff," and "District Manager") and also gives some examples of job titles that do not qualify (such as "Manager's Assistant," "Assistant to the Manager," and "Materials Coordinator").

The parties dispute whether plaintiff met the requirement of 24 months of business-related occupational experience. Plaintiff contends that the following jobs listed in his application materials satisfy that requirement:

- Hutchinson Technology, Inc., in Eau Claire, Wisconsin, as an "operator" from 2006 to 2008

- Uponor Wirsbo, in Apple Valley, Minnesota, as an operator from 2004 to 2005

- Speedway SuperAmerica gas station in Eagan, Minnesota, as an assistant manager from May 2003 to January 2004

- St. Peters's English Learning Center in Sindh, Pakistan, as director from 1986 to 1996

Applicants were offered the opportunity to voluntarily self-identify their race, gender, and national origin on the application for reporting purposes only. This information was kept confidential and was accessible only by designated human resources staff. No person involved in the screening or hiring process accessed the demographic information.

Plaintiff was one of 29 applicants for the position. Plaintiff did not disclose on his application that he is Asian and of Pakistani descent. A committee comprised of nine CVTC employees reviewed the applications to determine which candidates met the minimum qualifications for the position and which candidates were most qualified. The committee met on February 19, 2013, and concluded that plaintiff did not meet the minimum required qualifications for the position, so it chose not to interview him. Specifically, defendant states that the committee concluded that plaintiff did not meet the requirement of 24 months of business-related occupational experience, or the preferred qualifications of supervisory experience in a team management environment or experience with staff development and evaluation.

Plaintiff disputes defendant's characterization that he did not meet the minimum required qualifications. Plaintiff emailed CTVC human resources about his rejection. CTVC responded with a letter from the human resources director stating, "When compared to the selected applicants, your qualifications did not match our requirements *as closely*; therefore, you were not selected to interview." Dkt. 36-1 (emphasis added). Also, after plaintiff filed a complaint with the United States Equal Employment Opportunity Commission (EEOC), defendant responded by stating that plaintiff was not invited for an interview because only the "most qualified candidates" were selected, the candidates that were selected "clearly met or exceeded the stated minimum requirements," and that "[w]hile [plaintiff was] minimally qualified, [he] did not exemplify this advanced level." Dkt. 36-2, at 4. At some point during this process, the EEOC offered to mediate the parties' dispute. Plaintiff agreed to mediation but defendant declined. Eventually, the EEOC dismissed plaintiff's charge, stating that the evidence did not support plaintiff's belief that he was discriminated against.

As for the other job applicants, the committee concluded that six of the candidates, Erin Kohl, Lynette Livingston, Jeffrey Pepper, Denise Woodford, Joanne Kocik and Dennis Baskin, "demonstrated the minimum required qualifications for the position and . . . were the most qualified." Dkt. 44, at 17. Those six candidates were offered interviews. Kohl did not show up for her interview, and Baskin withdrew from consideration.

Kohl held a Master's degree in business administration and has also pursued Ph.D. credits. Kohl's most recent employment with Lakeland College included positions such as registrar, associate dean of operations and advising, interim vice president, adjunct instructor, and center director over the past eight years. Prior to employment with Lakeland College, Kohl was employed as a media planning manager.

Livingston held a Master's degree in education and was pursuing her education specialist degree. From 2008 to present she has been director of curriculum and instruction for the School District of Mauston. Prior to this position, Livingston had 14 years of experience as a business education teacher.

Pepper held a Master's degree in training and development and had more than 16 years of experience as a full-time instructor at CVTC. Pepper also served as program director for the Business Management Program for over two years at the time of his application. Prior to his employment with CVTC, Pepper was employed in positions such as training director, group leader, production manager, and unit manager.

Woodford held a Bachelor's degree in criminal justice and had completed some graduate school credits. At the time of her application, she had five years of experience as a business instructor at CVTC. Additionally, she had 20 years of experience as the owner of a DJ business. She also had previous experience as an operations manager.

Kocik held a Master's degree in career and technical education, and had been a part-time adjunct instructor for Wisconsin Indianhead Technical College for more than 16 years. Kocik also had more than 13 years of experience as a human resources director.

Baskin held a doctorate in educational administration with a minor in management. At the time of his application, Baskin was the director of the office of education for the Wisconsin Department of Corrections. He had also been a lecturer for UW-Whitewater for the past 15 years, the executive director of UW-Whitewater from 1997 to 2009, an associate dean at Madison Area Technical College in 2009, and a licensed realtor from 2000 to 2010.

Ultimately, the position was offered to Pepper. At the time he received the offer of employment, Pepper was 52 years old.

As part of an email correspondence with a human resources specialist at CVTC, plaintiff received an email detailing the racial breakdown of CVTC instructors and managers. As of March 14, 2014, only one of the 226 instructors holding jobs as full-time instructors was Asian, and that only one of the 46 employees holding full-time management positions was Asian.

ANALYSIS

A.  **Standard of review**

Summary judgment is appropriate if the moving party, here defendant CVTC, "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid

7

summary judgment, plaintiff "must set forth specific facts showing that there is a genuine issue for trial." *Id.* He may not simply rely on the allegations in his pleadings to create such a dispute, but must "demonstrate that the record, taken as a whole, could permit a rational finder of fact to rule in [his] favor." *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 931 (7th Cir. 1996) (citations omitted).

B.  Title VII

Plaintiff brings a discrimination claim under Title VII, which makes it unlawful for an employer to fail or refuse to hire an individual because of the individual's race, national origin, and religion. 42 U.S.C. § 2000e-2(a)(1). I understand plaintiff's claims to focus on the decision to select candidates to interview for the position. *See Shipley v. Dugan*, 874 F. Supp. 933, 937 (S.D. Ind. 1995) ("Title VII . . . [is] offended by discrimination at any point in the selection process.").

A plaintiff can prove discrimination under Title VII by using either the "direct" or the "indirect" method of proof. *Darchak v. Chicago Bd. of Educ.*, 580 F.3d 622, 630 (7th Cir. 2009). In any employment discrimination case, the central question is "whether the employer would have taken the same action had the employee been of a different race (age, sex, religion, national origin, etc.) and everything else had remained the same." *Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 540 (7th Cir. 2005) (quotation marks and citation omitted). Plaintiff does not explain whether he is attempting to proceed under either the direct or indirect methods, so I will consider both, addressing the indirect method first.

1.  Indirect method

Under the indirect method of proving discrimination, plaintiff must establish a *prima facie* case consisting of four elements: (1) he was a member of a protected class; (2) he applied

for an open position for which he was qualified; (3) he did not receive the position; and (4) those who were hired were not in the protected class and had similar or lesser qualifications. *Whitfield v. Int'l Truck & Engine Corp.*, 755 F.3d 438, 444 (7th Cir. 2014); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Satisfying all four prongs of the *prima facie* case shifts the burden to the defendant "to produce a legitimate, noninvidious reason for its actions." *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008). If the defendant rebuts the *prima facie* case, the burden shifts back to the plaintiff to show that the reasons proffered by the defendant are merely pretextual. *Id*.

Plaintiff meets the first and third elements for a *prima facie* case because it is undisputed that he is the member of a protected class and that he was not hired for the position. Defendant contends that plaintiff did not meet the second element because he did not have 24 months of business-related occupational experience. As for the fourth element, Defendant implicitly concedes that the successful applicant was not a member of an ethnic or religious minority,[2] but defendant contends that all the interviewed candidates were more qualified than plaintiff.

I conclude that plaintiff has adduced evidence sufficient to raise a genuine dispute as to the second element. Defendant argues in its brief that plaintiff was not considered for an interview because he failed to meet the minimum qualification of 24 months of business-related occupational experience, whereas the interviewed candidates clearly met this qualification. Plaintiff believes that he met the minimum qualifications, and I understand

---

[2] Plaintiff presents no evidence that members of the hiring committee knew whether the candidates who were interviewed were of different races, national origins, or religions than plaintiff. But it is possible that committee members could make an educated guess about an applicant's race, national origin, or religion from biographical data on his or her application.

9

him to be arguing that defendant used his qualifications as a pretext to dismiss his candidacy for discriminatory reasons.

The WTCS certification document for "Business Management" lists job titles that meet the qualification and others that do not. Plaintiff tries to establish that he met this qualification by discussing various jobs that he believes pertain to that qualification: his work as an assistant manager at a Speedway SuperAmerica gas station, his work as an operator with Hutchinson Technology, Inc. and Uponor Wirsbo, and his ten-year stint as director of St. Peter's English Learning Center in Sindh, Pakistan.[3] There is no genuine dispute about plaintiff's "operator" positions: there is no reasonable inference that these positions fit the type of jobs (such as "Department Manager," "Chief of Staff", or "Owner Proprieter") contemplated by the WTCS certification document. The other two jobs are closer calls. The assistant manager position at the gas station sounds does not sound particularly glamorous (plaintiff states that most of the job entailed cleaning and inventory, and he did not have the power to fire employees, only write them up), but it is a question of fact whether it was the type of experience that could meet the certification.[4] But ultimately this job is immaterial,

---

[3] Plaintiff makes other arguments in favor of his qualifications that add little for his case. For instance, he provides correspondence with an official from Wisconsin Indianhead Technical College, who stated that plaintiff's experience qualified as relevant occupational experience for the position of "Academic Dean, Trade & Technical Programming College Wide," Dkt. 36-8, but plaintiff does not explain whether that position and the position at issue here had the same occupational experience requirement, so the relevance of this information is extremely marginal.

[4] Defendant seems to argue that the assistant manager position does not meet the WTCS certification because the document also lists jobs such as "Assistant to the Manager" and "Manager's Assistant" as job titles that do not meet the certification. However, there is at least a reasonable inference that the job title "Assistant Manager" carries with it more responsibility than those titles, so I will not discount plaintiff's assistant manager job based on this argument.

because plaintiff held it for only nine months, well short of the 24 months required for the minimum qualification.

But plaintiff raises a genuine issue of fact with his ten years of part-time work as director of the St. Peter's English Learning Center. Director is a job title that almost certainly fits into the type of jobs listed in the certification document ("District Manager/Director" is explicitly included). Defendant tries to discount this job's significance by arguing it "is identified in [plaintiff's] resume under professional (teaching) experience," and his resume "is devoid of any reference to [this job] as business related occupational experience, rather than professional teaching experience." Dkt. 44, at 10. Defendant's argument is based on an interpretation of plaintiff's work history that a jury could reject.[5]

Plaintiff also points to evidence that suggests that defendant thought plaintiff was minimally qualified. Defendant's response to the EEOC charge states that plaintiff was not invited for an interview because only the "most qualified candidates" were selected, the candidates that were selected "clearly met or exceeded the stated minimum requirements," and that "[w]hile [plaintiff was] minimally qualified, [he] did not exemplify this advanced level." Dkt. 36-2, at 4. Plaintiff also submits a letter from the CVTC human resources director responding to an email plaintiff sent about the rejection. The letter stated, "When compared to the selected applicants, your qualifications did not match our requirements as closely; therefore, you were not selected to interview." Dkt. 36-1. The parties dispute whether

---

[5] Defendant also argues that at his deposition, plaintiff did not include his director job when asked about the jobs that fulfilled the "business related occupational experience" requirement. Dkt. 30, at 114. But plaintiff also stated in the deposition that the director job gave him experience supervising employees and managing a budget, *id.* at 94, 102-03, 113-15, which makes plaintiff's testimony ambiguous such that I will not hold him to the admission cited by defendant.

11

this evidence shows that defendant has admitted that plaintiff actually met the qualifications for the job. I conclude that the evidence raises a genuine dispute of fact regarding whether plaintiff met the minimum qualifications for the job.[6]

But plaintiff's case falters after that. To complete his *prima facie* case, he must adduce evidence to meet the fourth element, that he has similar or greater qualifications than the applicants who were interviewed. This issue is, of course, closely tied to the question of whether defendant's proffered reason for not interviewing plaintiff is a pretext to cover defendant's true discriminatory purpose. "[T]o show pretext, a plaintiff must show that (1) the employer's non-discriminatory reason was dishonest and (2) the employer's true reason was based on a discriminatory intent.'" *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010) (quoting *Fischer v. Avanade, Inc.*, 519 F.3d 393, 403 (7th Cir. 2008)).

Because the fourth element of plaintiff's *prima facie* case and the question of pretext are so closely related, I will consider them together. Plaintiff has a very difficult task to show that he was more qualified than the applicants who were interviewed, because Title VII plaintiffs face a high bar in showing the falsity of an employers' rationale that one applicant is more qualified than another. "[E]vidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Millbrook v. IBP, Inc.*, 280 F.3d

---

[6] Similarly, defendant argues that plaintiff failed to meet the preferred qualifications of supervisory experience in a team management environment or experience with staff development and evaluation. Plaintiff appears to give contradictory responses about these qualifications in his deposition, but the outcome of this case is not affected by whether plaintiff meets these non-mandatory qualifications. Even assuming he meets the qualifications, he is not plainly more qualified than the applicants who received interviews.

1169, 1180 (7th Cir. 2002) (internal quotation marks omitted). "This makes sense because a court's role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second-guesses employers' business judgments." *Id*. at 1181 (internal quotation marks omitted).

In his brief in support of his own motion for summary judgment, plaintiff argues that he was the only candidate who spoke several languages fluently, had any experience "teaching in any Sovereign Government of Native Americans," and had "gigantic practical application of each [of several listed] scientific subject[s]." Dkt. 21, at 12. These abilities and experiences were not qualifications listed in the job posting, and thus they bear no relevance to the interview decision. "What the qualifications for a position are . . . is a business decision, one courts should not interfere with. We do not tell employers what the requirements for a job must be." *Gorence v. Eagle Food Ctrs.*, 242 F.3d 759, 765 (7th Cir. 2001) (internal citation omitted). He also states that he had "more education than three finalist[s]," *Id*. at 12, but he does not parse the candidates' resumes to develop his argument on this point. And simple errors in assessing an applicant's qualifications does not prove pretext. *Kuhn v. Ball State Univ.*, 78 F.3d 330, 332 (7th Cir. 1996) ("Employers may act for many reasons, good and bad; they may err in evaluating employees' strengths; unless they act for a forbidden reason, these errors (more properly, differences in assessment) do not matter."). My own review of the records does not show that plaintiff was so better qualified than the other applicants that there "can be no dispute among reasonable persons of impartial judgment" that plaintiff was "clearly better qualified" under *Millbrook*. Plaintiff seems to agree that this is not a strong line of argument, because he states that he "do[es] not wish to criticize ways of CVTC went about analyzing its hiring decision and the qualifications of each candidate." Dkt. 36, at 9.

Plaintiff's major focus is on historical employment data. He submits an email sent to him by a human resources specialist at CVTC showing that as of March 14, 2014, only one of the 226 instructors holding jobs as full-time instructors was Asian, and that only one of the 46 employees holding full-time management positions was Asian. Dkt. 36-5, at 4. I understand plaintiff to be asserting that these statistics reveal a longstanding pattern of discrimination against Asians.[7]

In another recent case filed by plaintiff in this court, he submitted very similar evidence of the racial characteristics of employees at a defendant technical school. *See Memon v. Waukesha County Tech. College*, case no. 13-cv-704-jdp, 2015 WL 3651791 (W.D. Wis. June 11, 2015). I concluded that this evidence was insufficient to suggest discrimination, explaining as follows:

> I conclude that this statistical evidence adds very little to plaintiff's case. Usually, "[w]ithin the *McDonnell Douglas* individual disparate treatment model . . . statistical evidence is only one small part of a substantial web of evidence indicating pretext." *Bell v. E.P.A.*, 232 F.3d 546, 553 (7th Cir. 2000). In this case, plaintiff's statistical evidence holds even less weight because he does not provide the relevant "labor market" or "community" to which these hiring numbers might be compared. *Id*. ("A valid statistical analysis must encompass the relevant labor market."); *see also Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308-09 (1977). That is, plaintiff presents the raw data regarding defendant's instructor population but does not compare it to the population of the applicants for the jobs in question, persons nominally eligible for such jobs, or even the population at large. *See Hazelwood*, 433 U.S. at 308 & n.13 (Court considered "qualified public school teacher population" to be "relevant labor market" but suggested that date regarding applicants for teaching positions would also be "very relevant."). Thus, although from a superficial perspective the data seems to show that defendant has hired Asian instructors at a very low rate, it is difficult to draw any inferences from the data without more context.

---

[7] Plaintiff does not provide analogous information to support his claim for religious discrimination.

*Id*. at *10. The data presented by plaintiff in this case have the same problems. Although the data suggest that defendant has hired Asian instructors and managers at a very low rate, I cannot draw any inferences from the data without knowing more about the population of applicant pool, the labor market, or the community at large.

Plaintiff brings a number of additional arguments. He states that he applied for several jobs at CVTC in recent years and was interviewed for none of them. In particular, he states that he was turned down for a position as "behavioral and social science instructor" in 2007 because his degrees in agricultural economics were not "pure economics" degrees. Dkt. 36-7, at 1. Plaintiff argues that there is no such subject as "pure economics" and thus defendant "fooled" him.[8] Dkt. 44, at 21.

The mere fact that plaintiff applied for several jobs with defendant but failed to receive an interview, without being provided much more information about the particulars of the hiring process for those jobs, does not support his claims. With regard to the behavioral and social science instructor position, the only reasonable view of defendant's response is that defendant believed that a degree in agricultural economics is not as relevant to the position as a degree in economics would be, not that there is such a subject as "pure economics." Plaintiff does not present proof that defendant is incorrect about its assessment of the

---

[8] Plaintiff also argues that he was deemed unqualified for an "agriscience instructor" position because he did not have two years of relevant occupational work experience despite his "practical work" experience in agriscience as a student and academic counselor at the Sindh Agriculture University Tandojam in Pakistan. Dkt. 21, at 15-18. However, I will disregard this line of argument because plaintiff raised it only in his deficient motion for summary judgment, did not re-raise the argument in his opposition to defendant's motion for summary judgment, and did not provide proposed findings of fact sufficient for the court to determine that he was in fact qualified for that job or that the qualification rationale for that job was based on discriminatory animus.

relevance of certain degrees to the position, much less evidence showing that defendant is so incorrect that it indicates discriminatory animus.

Finally, I understand plaintiff to be arguing that his claim is supported by the fact that at some point during the EEOC's investigation of plaintiff's equal rights complaint, it offered mediation, to which plaintiff agreed but defendant declined. Neither party fleshes out the circumstances behind this offer, but there is no reason to believe that the offer suggests discriminatory intent on the part of defendant, as the EEOC ultimately concluded that plaintiff was not discriminated against. Because plaintiff fails to provide evidence that could lead a reasonable jury to find that defendant's decisions regarding plaintiff's job application were pretextual, plaintiff's attempt to prove discrimination under the indirect method fails.

### 2. Direct method

Under the direct method, a plaintiff must produce either direct or circumstantial evidence that would permit a jury to infer that discrimination motivated an adverse employment action. *Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 527 (7th Cir. 2008). Direct evidence is something close to an explicit admission by the employer that a particular decision was motivated by discrimination; this type of evidence is rare, but it "uniquely reveals" the employer's intent to discriminate. *See Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005). Plaintiff does not present any evidence of this nature.

More common is proof by circumstantial evidence, "which suggests discrimination albeit through a longer chain of inferences." *Hasan*, 552 F.3d at 527 (internal citation omitted). A plaintiff can support his claim by "constructing a 'convincing mosaic' of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker. That circumstantial evidence, however, must point directly to a

discriminatory reason for the employer's action." *Koszola v. Bd. of Educ. of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004) (quoting *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)). Evidence that proves a claim under the direct method typically includes:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward, or comments directed at, other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; or (3) evidence that the employer offered a pretextual reason for an adverse employment action.

*Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 805 (7th Cir. 2014) (citation omitted). A plaintiff need not produce evidence in each category to survive summary judgment. *See Darchak*, 580 F.3d at 631.

The circumstantial evidence plaintiff has submitted falls into the latter two categories. But that evidence does not amount to a convincing mosaic showing discrimination for the same reasons that the evidence fails to show pretext in the hiring process, as discussed above. All plaintiff can really show is that he was perhaps minimally qualified for the job, but that defendant either mistakenly decided he was not qualified, or that defendant chose to interview applicants it deemed to be more qualified. Neither would support a discrimination claim. Moreover, plaintiff's statistical evidence is so devoid of context as to provide virtually no value. Nothing plaintiff presents comes close to pointing *directly* to a discriminatory reason for the hiring decision, as required under the direct method.

Because plaintiff is unable to raise genuine issues of material fact under either the direct or indirect methods, I will grant defendant's motion for summary judgment on plaintiff's Title VII claim.

C.   Age discrimination

The ADEA prohibits employers from refusing to hire workers who are 40 or older on the basis of their age. 29 U.S.C. §§ 623(a)(1), 631(a). As with Title VII claims, a plaintiff suing under the ADEA may show discrimination directly or indirectly. *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010). Plaintiff does not present any evidence to support his ADEA claim other than that he is over 40 and he did not get the job. Unlike his Title VII claims, plaintiff does not raise any argument or present statistical evidence to determine whether defendant treated younger or older applicants differently. Moreover, it is undisputed that the candidate who was hired, Jeffrey Pepper, was 52 years old at the time he was hired, 8 years older than plaintiff. Because plaintiff has failed to present any evidence creating a dispute of material fact on his ADEA claim, I will grant defendant's motion for summary judgment on that claim.

ORDER

IT IS ORDERED that:

1.   Plaintiff Iftikhar Ahmed Memon's motion for summary judgment, Dkt. 21, is DENIED.

2.   Plaintiff's motion to "enforce the law or laws against CVTC which prohibited to sign blank forms," Dkt. 41, is DENIED as moot.

3.   Plaintiff's motion for the court's assistance in recruiting him counsel, Dkt. 46, is DENIED.

4.   Defendant Chippewa Valley Technical College's motion for summary judgment, Dkt. 24, is GRANTED.

5. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered August 20, 2015.

                                        BY THE COURT:

                                        /s/

                                        JAMES D. PETERSON
                                        District Judge